IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01524-MEH

ARTHUR WALKER,

    Plaintiff,

v.

BRANDON LANKFORD, and
MARSHAL CALHOUN,

    Defendants.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies ("Motion") filed by Defendant Brandon Lankford ("Defendant"). ECF 26. The Motion is fully briefed, and the Court finds that oral argument would not materially assist it in adjudicating the Motion. For the reasons that follow, the Motion is granted. In light of that, Defendant's pending motion to dismiss (ECF 22) is denied as moot.

## BACKGROUND

Plaintiff is a prisoner currently housed at Sterling Correctional Facility, who initiated this action on June 4, 2021. ECF 1. On July 26, 2021, Plaintiff filed the operative Amended Complaint, alleging generally that Defendants deliberately denied him access to protected custody and for excessive force. ECF 8, Am. Compl. at 4–5. Defendant filed a motion to partially dismiss on October 4, 2021. ECF 22. Shortly thereafter, Defendant filed the present Motion, arguing that Plaintiff has failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform

Act ("PLRA"). ECF 26. Plaintiff opposes summary judgment, arguing that he did exhuast, or, alternatively, any failure to exhaust was not his fault. ECF 141.

## STANDARDS OF REVIEW

### I. Treatment of Pro Se Pleadings

A pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean, if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110). However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

### II. Motion for Summary Judgment

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the moving party has the burden of proof—the plaintiff on a claim for relief or the defendant on an affirmative defense—his[, her, or its] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)). "In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment." *Id*. at 1154 (quoting 11 Moore's Federal Practice, § 56.40[1][c] (Matthew Bender 3d Ed. 2015)). Only evidence for which the content and substance are admissible may be considered when ruling on a motion for summary judgment. *Johnson v. Weld Cty., Colo*., 594 F.3d 1202, 1210 (10th Cir. 2010).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *see also Hysten v. Burlington N. & Santa Fe Ry*., 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting

3

*Celotex*, 477 U.S. at 324); *see Mountain Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1170 (10th Cir. 2010) ("On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [its] case in order to survive summary judgment.") (quoting *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007)). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Administrative Regulation ("AR") 850-04 establishes the Colorado Department of Corrections' ("CDOC") requirements and procedures for offenders to file grievances. ECF 26-1, Exhibit A, Decl. of Tony DeCesaro, ¶ 4; ECF 26-2, Attachment 1 to Exhibit A (AR 850-04(III)).

2. AR 850-04 provides a formalized three-step grievance process for inmates. Exh. A, ¶ 4; ECF 26-2 (AR 850-04(IV)(C)).

3. AR 850-04 provides that an inmate is required to first attempt to resolve an issue or complaint by filing a document known as a Step 1 grievance. Exh. A, ¶ 5; ECF 26-2 (AR 850-04(IV)(C), (D)).

4. The grievance must only address one problem or complaint and must include a description of the relief requested. Exh. A, ¶ 5; ECF 26-2 (AR 850-04(IV)(D)(6)).

5. A Step 1 grievance must be filed no later than thirty (30) calendar days from the date the inmate knew, or should have known, of the facts giving rise to the grievance. Exh. A, ¶ 5; ECF 26-2 (AR 850-04, Part (IV)(F)(1)(a)).

6. After submitting a Step 1 grievance, the offender is to receive a written response to that grievance within 25 calendar days of the case manager's or community parole officer's ("CPO") receipt of the Step 1 grievance. Exh. A, ¶ 6; ECF 26-2 (AR 850-04, Part (IV)(F)(1)(b)).

7. If the inmate is not satisfied with the result of the Step 1 grievance, he must file a Step 2 grievance concerning the issue within five days of receipt of the written response to the Step 1 grievance. Exh. A, ¶ 6; ECF 26-2 (AR 850-04(IV)(F)(1)(d)).

8. The same general timelines applicable to Step 1 grievances apply to Step 2 grievances, including the fact that the offender must file a Step 3 grievance within five days of receipt of the written response to the Step 2 grievance. Exh. A, ¶ 7; ECF 26-2 (AR 850-04(IV)(F)(1)(b), (d)).

9. The Step 3 grievance is the final step in the CDOC's grievance process. Exh. A, ¶ 8; ECF 26-2 (AR 850-04(IV)(E)(3)(c)).

10. A substantive issue or remedy may not be added at a later step if it has not been contained in each previous step of that particular grievance. All issues and remedies contained in the original grievance must be incorporated into each subsequent step of the grievance. Failure to renew each element of the complaint and/or requested relief in subsequent steps will be deemed a waiver of those elements or remedy. Exh. A, ¶ 9; ECF 26-2 (AR 850-04(IV)(D)(7)).

11. The CDOC's grievance process ensures that all grievances submitted by offenders are received, tracked and responded to. Exh. A, ¶ 10; ECF 26-2 (AR 850-04, Part (IV)(C)(1)).

12. Upon receipt, the CDOC's grievance coordinator logs and scans each grievance received into the CDOC's electronic grievance database, and then routes and tracks each grievance filed. Exh. A, ¶ 12; ECF 26-2 (AR 850-04, Part (IV)(C)(7), (9)).

13. All grievances submitted in accordance with the CDOC's administrative grievance process are assigned a tracking number for reference. Exh. A, ¶ 13; ECF 26-2 (AR 850-04(IV)(C)(10)).

14.     If an inmate fails to file a grievance within the time periods set forth in AR 850-04, or otherwise fails to comply with any of the procedural rules set forth in AR 850-04, the inmate has failed to comply with the CDOC's grievance process and has failed to exhaust his administrative remedies. Exh. A, ¶ 14; ECF 26-2 (AR 850-04, Part (IV)(E)(3)(c)(2)).

15.     Inmates within the CDOC may file grievances regarding a broad range of topics, including, but not limited to, policies, conditions, and incidents within the facility that affect the offender personally, as well as incidents that the offender was subject to excessive force, retaliation, and discrimination. Exh. A, ¶ 15; ECF 26-2 (AR 850-04(IV)(D)(1)).

16.     An inmate specifically may not file a grievance concerning placement in protective custody. Exh. A, ¶ 16; ECF 26-2 (AR 850-04(IV)(D)(2)(h)); s*ee also* ECF 26-7, Exhibit B, Decl. of Austin Chrestensen, ¶ 16.

17.     A separate set of procedures is used for any inmate requesting voluntary placement in protective custody. Exh. A, ¶ 17; ECF 26-3, Attachment 2 to Exhibit A (AR 650-02(IV)(C)(3)); *see also* Exh. B, ¶ 16.

18.     An inmate seeking protective custody must complete a written statement using AR Form 650-02A, "Offender Protective Custody Request," justifying its need. Exh. B, ¶ 9; ECF 26-8, Attachment 1 to Exhibit B (AR 650-02(IV)(C)(3)). The justification must include a list of individuals who are a threat and the reason the threat is serious enough to require protective custody. Exh. B, ¶ 10; ECF 26-8 (AR 650-02(IV)(C)(3)).

19.     To exhaust his administrative remedies to be placed in protective custody, Plaintiff was required to fill out an AR Form 650-02A, "Offender Protective Custody Request," justifying his need for protection. Exh. A, ¶ 28; ECF 26-3 (AR 650-02(IV)(C)(3)); Exh. B, ¶ 10.

20. There is no record of Plaintiff ever filling out an AR Form 650-02A, "Offender Protective Custody Request" for protective custody during the time he was at BVCF. Exh. B, ¶¶ 18–20.

21. On April 12, 2021, ten days after the alleged incident, Plaintiff filed a Step 1 grievance. Exh. A, ¶¶ 20–21, 24; ECF 26-4, Attachment 3 to Exhibit A (Step 1 Grievance). The Step 1 grievance was titled "move to another facility," "hate crime complaint" and "unlawful use of force complaint." ECF 26-4. He did not specifically allege retaliation. *Id.*

22. A prison official denied the grievance on April 20, 2021 because Plaintiff did not follow the proper procedure for requesting protective custody. *Id.* The prison official directed him to follow the procedure in AR 650-02. Exh. A, ¶ 24.

23. On May 17, 2021, Plaintiff submitted a Step 2 grievance. *Id.* ¶¶ 20, 22, 23, 25; ECF 26-5, Attachment 4 to Exhibit A (Step 2 Grievance). The grievance was filed beyond the time to do so. Exh. A, ¶ 22. In the Step 2 grievance, Plaintiff requested a policy change in protective custody, and alleged that hate crimes had been committed. *Id.* ¶ 25. He did not specifically allege use of excessive force, nor did he urge unlawful retaliation. *Id.* For the first time, Plaintiff alleged that Defendant used the "n-word." *Id.* ¶¶ 23, 25.

24. The next day, a prison official denied the Step 2 grievance stating that Plaintiff did not follow the policies and procedures for requesting protective custody, set forth in AR 650-02. The official noted that Plaintiff had not exhausted his means of settling the matter. *Id.* ¶ 25; ECF 26-5.

25. More than a month later, Plaintiff filed his Step 3 grievance. Exh. A, ¶¶ 20, 22–23, 26; ECF 26-6, Attachment 5 to Exhibit A (Step 3 Grievance).

26. The Step 3 grievance alleged "hate crimes," that Plaintiff was "denied protective custody," and added that he suffered serious injuries. Exh. A, ¶¶ 23, 26; ECF 26-6.

27.  On August 4, 2021, the prison official denied the Step 3 grievance, reiterating that requests for protective custody were not subject to the grievance procedure. Exh. A, ¶ 26; ECF 26-6.

28.  None of his three grievances specifically complain that he was retaliated against for filing a lawsuit against a prison official. Exh. A, ¶ 26; ECF 26-4; ECF 26-5; ECF 26-6.

## ANALYSIS

"The burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). "Dismissal under § 1997e(a) for failure to exhaust administrative remedies therefore cannot usually be made on pleadings without proof." *Culp v. Williams*, No. 10-cv-00886-CMA-CBS, 2011 WL 1597953, at *2 (D. Colo. Apr. 6, 2011) (citations omitted).

The PLRA requires the exhaustion of administrative remedies before an incarcerated person may bring an action concerning prison conditions under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The Supreme Court determined that "exhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). The exhaustion of administrative remedies need not be pleaded in the complaint but must be raised as an affirmative defense. *Jones*, 549 U.S. at 216. The rules governing exhaustion are not articulated by the PLRA but are defined by the respective prisons' grievance process. *Id*. at 218. In order to "properly exhaust" in satisfaction of the PLRA's requirements, the plaintiff prisoner must comply with prison grievance procedures. *Id*. Therefore, according to *Jones*, claims that have not completed the prison grievance process may not be brought in federal court.

Here, the undisputed facts demonstrate one primary reason[1] why summary judgment is warranted: Plaintiff's grievances were untimely. Proper exhaustion under the PLRA requires "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Pursuant to AR 850-04(IV)(F)(1)(a), an offender has thirty "calendar days from the date the offender knew, or should have known, of the facts given rise to the grievance" to file a Step 1 grievance. The offender is supposed to receive a written response to the Step 1 grievance within twenty-five calendar days of receipt of the grievance. Exh. A, ¶ 6; AR 850-04(IV)(F)(1)(b). If unsatisfied with the outcome of the Step 1 grievance, the offender must file a Step 2 grievance within five days of receipt of the written response to the Step 1 grievance. Exh. A, ¶ 6; AR 850-04(IV)(F)(1)(d). Again, a written response is due to the offender within twenty-five calendar days of receipt of the grievance. AR 850-04(IV)(F)(1)(b). The offender then has five days to file a Step 3 grievance if displeased with the result of the response to the Step 2 grievance. AR 850-04(IV)(F)(1)(d). "Step 3 grievances will be answered within 45 days of receipt by the grievance officer." AR 850-04(IV)(F)(1)(c).

The process established by the CDOC ensures that all grievances submitted by offenders are received, tracked, and responded to. Exh. A, ¶ 10; AR 850-04(IV)(C)(1). When a grievance is received, the grievance coordinator logs and scans each grievance into an electronic database. *Id.* ¶¶ 11–12; AR 850-04(IV)(C)(5)(a), (b). All properly submitted grievances are assigned a tracking number for reference. Exh. A, ¶¶ 12–13; AR 850-04(IV)(C)(7), (9)–(10). If an offender fails to file a grievance within the prescribed time periods, or otherwise fails to comply with any other

---

[1] Because the Court finds this reason sufficient to grant summary judgment, the Court does not address Defendant's alternative arguments raised in the Motion.

procedural rule set forth in AR 850-04, the offender has failed to comply with the grievance process and thus failed to exhaust his administrative remedies in the CDOC. Exh. A, ¶ 14.

In this case, the CDOC's Step 3 Grievance Officer, Tony DeCesaro, reviewed the CDOC records for grievances submitted by Plaintiff. It is undisputed that Plaintiff timely filed his Step 1 grievance on April 12, 2021 since he filed it only ten days after the alleged incident. ECF 26-4. He acknowledged receipt of a response to the Step 1 grievance on May 3, 2021. *Id.* At the very least, Plaintiff's deadline for filing a Step 2 grievance was therefore five days from then. ECF 26-2 (AR 850-04(IV)(F)(1)(d)). He did not file his Step 2 grievance until May 17, 2021. Exh. A, ¶¶ 20, 22–23, 25; ECF 26-5. Plaintiff claims he sent it on May 4, 2021, but this assertion is unsupported by the record. ECF 41 at 2. Regardless, a prison official responded to the Step 2 grievance the day after it was submitted. Exh. A, ¶ 25; ECF 26-5. Plaintiff claims that he did not receive the response until June 9, 2021. ECF 41 at 2. Consequently, he responded on June 10, 2021. *Id.* Again, Plaintiff's contentions are not supported by the record. Plaintiff did not submit the Step 3 grievance until July 15, 2021, over a month after receiving his Step 2 grievance. Exh. A, ¶¶ 20, 22–23, 26; ECF 26-6. The Step 3 grievance was denied on August 4, 2021. ECF 26-6. Based on these dates as established in the record, Plaintiff's Step 2 and Step 3 grievances were untimely. As a result, Plaintiff did not exhaust his administrative remedies.

Plaintiff argues that he timely filed his grievances because an executive directive issued by Executive Director Dean Williams in March 2020[2] extended the times for submission of grievances. However, Plaintiff does not support this assertion by pointing to anything in the record. In fact, the document he attaches to his response as Exhibit A states that the executive directive

---

[2] Defendant identifies this document in his reply as the "March 2020 Memorandum," though Plaintiff's version appears to be "a type-written kite response." Reply at 4. The Memorandum can be found attached to Defendant's reply at ECF 50-1.

extended the time an offender will "receive[ ] a *written response* to each step I and step II grievances." ECF 41 at 8 (emphasis added). It does not state that offenders have additional time to submit grievances. Without proper supporting authority, Plaintiff has failed to create a genuine dispute of material fact as to when his grievances were due to be filed. Fed. R. Civ. P. 56(c)(1) (stating that a party asserting a fact is genuinely disputed must do so by "(1) citing to particular parts of materials in the record, . . . or (2) showing that the materials cited do not establish the absence or presence of a genuine dispute.").

As a final matter, to the extent Plaintiff argues that he was prevented in any way from availing himself of the exhaustion process, his arguments are unavailing. In *Aguilar-Avellaveda v. Terrell*, the Tenth Circuit held that courts "are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." 478 F.3d 1223, 1255 (10th Cir. 2007). Here, at the summary judgment stage, the Court can consider additional evidence beyond what Plaintiff pleaded, including Mr. DeCesaro's affidavit. Mr. DeCesaro has declared, under penalty of perjury, that the only record of Plaintiff's grievances regarding the claims in this mater were those already described by the Court. Exh. A, ¶ 30. "A plaintiff seeking to be excused from the exhaustion requirement on [grounds that administrative remedies are unavailable] must do more than make unsupported conclusory allegations of misconduct by prison officials." *Bell v. Ward*, 189 F. App'x 802, 803–04 (10th Cir. 2006). Thus, the Court finds that Plaintiff has not adequately demonstrated that the defects in his exhaustion of administrative remedies were "procured from the action or inaction of prison officials." *Aguilar-Avellaveda*, 478 F.3d at 1225.

Therefore, the unrebutted evidence reflects that Plaintiff has failed to exhaust the required administrative remedies, and this Court is barred from hearing Plaintiff's claims as against Defendant. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion

of the district court[ ] but is mandatory."); *see also Jones*, 549 U.S. at 220 ("All agree that no unexhausted claim may be considered.").

## CONCLUSION

The Court finds that Plaintiff fails to raise a genuine issue of material fact as to whether he fully exhausted administrative remedies, and Defendant meets his burden of demonstrating that Plaintiff did not exhaust. Accordingly, Defendant's Motion [filed October 20, 2021; ECF 26] is **granted**. Plaintiff's claims against Defendant Lankford are dismissed due to Plaintiff's failure to exhaust administrative remedies as required by the PLRA. Consequently, Defendant's motion to dismiss [filed October 4, 2021; ECF 22] is **denied as moot**.

Entered this 7th day of February, 2022, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge